14-1421 N. Ray Munz. Thank you, Your Honor. Mr. Berkowitz. Thank you, Your Honor. Your Honor, without waiving any of the briefed issues, I'd like to focus today, if I could, on three issues. The first issue is the claim combination lacks the bottom opening required by the claims. The second issue is that the references that were used teach the use of insert or insert cartridges and the claims require that the mixed container be fixedly secured or integrally formed with the outer bottle. In the primary reference, that is the Brina patent, specifically teaches away from using rupturable membranes, which is relied upon in the rejection. The USPTO treats a surface and an opening interchangeably. They are not. The claims require an opening in the bottom of the mixed storage container through which the mixed contents can go into the bottle for mixing in the container. The claim bottom opening is not found in the prior at all. Your Honor, the first reference, which is the Brina reference that I'm referring to, appendix page 48, it's very clear that the insert cartridge, which is denoted here as 18, is a one-piece integral unit where there's no separation of an opening. The second reference that's applied is the Weinberg reference. Counsel, I understand why you're making this argument because the red brief seems to suggest that Brina describes an opening. So I understand why you're making the argument, but I don't know why they made that argument because the examiner and the board both said, and I'm going to quote from the examiner's opinion, it would have been obvious to one of ordinary skill in the art at the time of the invention to have made the top and bottom surfaces of the cartridge in Brina of thin film membranes in order to provide surfaces that can be easily pierced by a tube. So I guess the point is I didn't read the examiner or the board as finding as a factual matter that Brina, Brina, whatever you want to say it is, discloses an opening, but rather it discloses a surface that would have been obvious to replace that surface with a film membrane. I agree. You don't have to waste your time, I don't think, on the argument about whether Brina does or doesn't disclose an opening because I don't think it does and I don't think anybody found that it does. So I'm not sure why, if the red brief addresses that, why they do. So why don't you focus on why it wouldn't have been obvious to replace the surface in Brina with a film that would be easily punctured. I agree. In fact, I labored during the process to try to understand. I may have misapprehended what it was that the examiner and then the board was saying, but I agree that, and that was my opening point, is that they appear to treat surface and opening interchangeably and we don't think that they are. Your Honor, to specifically address the question of why I don't think it would be obvious is because if you look at the Brina reference itself, and that's my third point that I alluded to earlier, if you look at the Brina reference column 1, lines 19 through 22, here's what it says. By the way, the Brina reference teaches this cartridge, 18, that that is made of a hard shell plastic or rubberized material that can be punctured and then sort of re-seal itself. So here's what they say about foil membranes. Other arrangements include rupturable separating walls. I'm sorry, what are you reading from now, Brina? Yes, this is the Brina pattern, Your Honor. What column and line? It's column 1 and it's lines 19 through 22. And here's what they say. Other arrangements include rupturable separating walls or membranes and are prone to premature rupturing, leakage chambers, and incomplete mixing within the container prior to delivery. That, in my view, is a plain teaching that you would never use a film membrane to construct an entire surface. The board reasoned that Brina did not teach away from that, and here's their reason. It's on page A6 of the appendix. They say Brina does not identify any specific causal relationship between these shortcomings, referring to the premature rupturing, and rupturable membrane structures themselves. Well, that's exactly what the Brina pattern actually says. It says those things, those rupturable membranes, don't use them because they're prone to premature rupture and the leakage. Well, I assume you're focusing on that membrane language, right? Because walls are the vertical parts, not the bottom or the top. They're differently defined. In Brina, when it says walls, it means the up and down side things. It doesn't mean the bottom or top. It actually expressly calls out the bottom surface as something distinct from the walls, right? Well, in Brina, it's all the same material. So that's been part of my confusion also, is because how they delineate that is in applying this reference. Well, wait a minute here. It says, though, in Brina, column 3, for example, around line 45, it says pushing downward to penetrate the lower surface of the cartridge of the lower portion, 48, of wall 46. So they distinguish at least a portion of the unitary structure as being a lower portion. They target that lower portion as the portion that you're going to rupture, right? They do, and in fact, if you look at figure 2 of that patent, of the Brina patent, it sort of shows what it's talking about. That slanted part? The slanted part, that's going to be, as we see down in figure 6, that's the target part where the cutter assembly is to punch through. So that's why they separately discuss that. But the construction here is disclosed in Brina, is it's a one-piece sort of like a baby formula. The plastic goes into a baby formula, although I think it's either rigid or rubberized material. They're saying don't use membranes. And of course, with baby formula, you don't want to puncture it so it drains out the bottom. But that is why they segregate, that's why they separately identify those portions. But that led to part of my confusion in understanding what it was the patent office has been doing, because if you do take that unibody construction, even identifying the bottom portions and surface portions, how do you integrally format with the outer body? How are they actually constructing that device? And that's one... But that's a different question, and if you want to morph into that, that's fine, but that's a different question from whether or not it's obvious to have a bottom surface with a membrane, right? That's your next point I think you're moving on to. I think it does teach a bottom surface, but it teaches a composite one piece unit, not constructing that cartridge 18 out of different materials at different places. So that's a wholesale change. And I think it does feed into, if you're going to make a wholesale change to the construction, how is it then you take that newly constructed device, whatever its actual contours might be, and securely attach it to the sidewall of the outer body, or integrally format with that sidewall? Is it... So do I have to agree with you that BRENA teaches away from using rupturable membranes or thinner membranes in order to find for you on this point? Because simply noting some of the flaws in a particular device doesn't usually satisfy teaching away as a concept under our case law. I think that there are other reasons that I should prevail, but that is my first point, that there is no separate bottom opening, and I don't believe it's appropriate to substitute the required opening, the claimed opening, and say a surface can be that opening if you puncture it. Because that would vitiate the claim element itself because any surface is capable of being cut, punctured, or if necessary, blown open. If you're going to create an opening through some sort of violence, then I don't know what the rules mean. You're creating an opening through violence in the patented invention, too, and identically the way. The opening is claimed... It's a little less violent, right? A little less force. In this case, the opening is claimed as being a defined opening, and it is subsequently enclosed with a film membrane. So there is an opening that you're not having to punch through that rigid, intricately formed or fixably mounted storage container. And if you look at the way it's described, it's physically the same kind of plastic material as is used to make the outer container. So in that internal storage container, there is a defined opening that's claimed, and it is enclosed with a membrane, and that is one of the issues that we've raised that there is no defined opening, even in their combination. They have to create it in use. One of the other main points, as I alluded to earlier, that I'd like to address... What does your application say about the benefits of the membrane? The benefits of the membrane is that it's easily ruptured. Where is that? In the abstract, it says... What's the... I'm sorry, A18. The abstract refers to the seal between the two containers being pierced.   The seal between the two containers is being pierced. Is there anything else in the spec? Anything? This is a question I had not anticipated. I apologize. In page A13, in paragraph 11, it refers to a light plastic film   And it says, in paragraph 11, it refers to a light plastic film to facilitate passage of the mixed stir there through. An area of weakness can be formed. I assume the area of weakness is the area where the film is. That's what you're talking about. That's correct. Okay, thank you. Do you want to save the rest of your time for rebuttal? Your Honor, if I might, I'd like to just address one quick issue. And that is, from an obviousness standpoint, the combination. To me, frankly, it doesn't make any sense to take one reference here that teaches an insertable cartridge that gets inserted into it and the top's screwed on so it's locked in place. And the other reference that's applied has a wall that's formed. But the central aspect of this invention, that is the Weinberg 372 patent, is that these foil packages get inserted. Those foil packages are replaceable. That's the whole point of Weinberg. That is, this cleaning hemophilic compound gets used up. You can open up the top and put in a replacement package. To me, I don't understand how you take that replaceable cartridge and this insertable cartridge and conclude that it's obvious to securely mount them so that they cannot be removed. Fixably securing that cartridge inside the other bottle. They're the antithesis of each other. Something that can be inserted and removed versus something that's permanently secured. I don't believe that there's a suggestion that there should be an obviousness there. Thank you. Okay, thank you. Ms. Hunt, is it pronounced? Yes, Your Honor. May it please the Court, just as an initial matter, I would just like to note we had no notice of a demonstrative. I don't know that we would have objected to it under this Court's rule. It's the same as the figures in the brief. Yes, Your Honor. But pulling back, this case, I think, is fundamentally an easy one. Muntz's claimed mixing bottle is merely a predictable use of prior art elements performing their established functions. It's precisely the type of claim that this Court and the Court in KSR has held should be found obvious. As the Board found, and as Muntz did not contest before the Board, the Brenner reference disclosed all the claim limitations of the invention except two. The film membranes sealing the top and the bottom The film membranes sealing the top and the bottom opening. At all times, they were clear to include the language bottom opening as well, right? They didn't leave that out. The Board? Them when they argued. They didn't leave it out, but I want to address Your Honor's point about the bottom opening and the discussion about the bottom opening. There wasn't a ton of discussion about the bottom opening in the Board opinion and with the examiner because it wasn't much of an issue that was made by appellant. There was never this big argument, oh, there's no bottom opening in Brenner. It was the Board rightly, well, assumed that it was met either by Brenner or by the analysis that you discussed, Your Honor, in the combination of Brenner and Lisebrand. Because the whole focus, the big focus of the issues before the Board was was there motivation to combine with Weinberg and was there motivation to combine with Lisebrand. And the Board did address motivation to combine with Lisebrand. So there's this cartridge, and right now you have a cartridge that is in Brenner where the top and bottom are made of this rigid surface that is pierced by the mixer when the mixer gets inserted. It says, look, look at Lisebrand, and that's my only quibble with the demonstrative because Lisebrand is a reference that appellant seeks to ignore. So, for example, looking at Figure 9 of Lisebrand, on page 872, Lisebrand has an internal container. This is a mixing bottle for drinks. It has an internal container with a top membrane and a bottom membrane sealing the openings of the container. So the whole focus before the Board was was there motivation to combine the top and bottom membranes from Lisebrand with the cartridge of Brenner so that instead of having the rigid, pierceable top and bottom, you would have these film membranes. It's implicit and covered by that analysis that you need to have openings. I mean, in both the application and here, the openings are closed. In Muncie's application, if you look at the figure, for example, on A12 and A13, when in the specification, the application states, the light plastic or foil is attached to the shot glass. So those are the membranes, the light plastic or foil, and the shot glass is the internal storage container. So just like the claimed invention here, there is no, what's claimed does not have an ultimate opening. It's sealed by something. In Brenner, it was sealed by the same material. What about their argument that Brenner teaches away in the, I guess it's based on Column 1, Line 19. Is that referring, and I guess I'd like to know a little bit about what the exemplars are there, Moraine and Landford-Koenig. Is that referring to walls made out of membranes or tops and bottoms made out of membranes? Well, Your Honor, there are several things that's going on there. First, just as a preliminary matter, this argument was not made in the opening brief to this Court, so we didn't have a chance to respond to it. But it was made to the Board, and going to where the Board addressed it, the Board looked at this argument on page, A6 and A7 of its opinion, starting about in the middle of page A6 and then ending the first paragraph on A7. And so the Board found a couple things about this teaching away argument. And the first one is that the portion of Brenner that was cited by the applicant, which is where you were looking, Your Honor, which is on A49, Column 1, starting about, well, the discussion starts about line 15, that in some devices a frangible wall separates the two fluid-filled chambers, and there's no control of the amount of one component to be mixed into the other. So this says, then other arrangements include rupturable separating walls or membranes and are prone to premature rupturing, leakage chambers, and incomplete mixing within the container prior to delivery. So the Board first found that this statement within Brenner is not necessarily a clear teaching away because it is not clear what is causing these problems of premature rupturing, leakage chambers, and incomplete mixing. This is just a criticism of the broad prior argument. What's the answer to my question? Exemplary of the recent devices having a frangible wall. Those talk in moraine and land for coney. Do you know what those are? You know, I should have looked back at those references. I have them right here on my computer. So interestingly, moraine is a reference which has a film on the top and bottom that is perforated of weaker material in order to be able to facilitate piercing. So while it seems quite frankly like moraine might have been something you would have been better off citing here than Brenner against him, but nonetheless it does seem that that disclosure in moraine is what he's clearly saying you shouldn't have and that's kind of what he does. I'm saying what Brenner says you shouldn't have. Well, Your Honor, so it says exemplary of these recent devices with a frangible wall taught in moraine and they have coaxial cables with chokers fitting telescopically within the smaller chambers. So to the extent that this is a criticism and the board noted to the extent that there's an issue, Liserbram does teach foil membranes and Liserbram favors the use of foil membranes. So the board said, look, when we're comparing Brenner's disclosure which is potentially unclear as to exactly what the criticism is, whether the criticism is directed towards the foil membranes or the walls, because we have this teaching from Liserbram that favors the use of foil membranes, we need to balance those disclosures and see if there's a clear teaching away. And the board found that in light of the fact that the preferred embodiment of Liserbram was foil membranes that it couldn't use, that Brenner did not distinctly teach away here. I guess I'm not understanding that argument. You're saying I'm supposed to say Brenner doesn't teach away because some other reference discloses it and doesn't discourage you from using it. That doesn't make sense. But on balance, would one of ordinary skill in the art be led away from using foil membranes in light of the disclosure of Brenner and Liserbram? So weighing the both of those together, looking at Liserbram and Brenner, would one... So you're saying even if I accept as completely factually given that Brenner in fact teaches away, you're saying based on the other state of the prior art, one of skill in the art would ignore that particular teaching in Brenner and nonetheless use Brenner and its structure anyway? Well, yes, Your Honor. I don't know about completely ignore it, but otherwise, yes. But the board did find that looking at the disclosure of Brenner, even if it's some criticism, and I did note that there was some criticism, but some potentially causally unclear criticism, that still one of ordinary skill in the art would not have been led away given the state of the art. Well, isn't perhaps the answer here that while Brenner may say don't use membranes because they're too easily ruptured, the patentee here was looking to membranes because they were easily ruptured. In that part of the specification that he cited to us, that seemed to be an advantage that they were looking for here. I think that's a very good way to look at it, Your Honor, and that is an advantage that they did seek in their specification, including having a portion within that membrane that was particularly weak. On the other issues, are there any more questions on the bottom opening? On the other issues... You do realize that in page 16 of your brief, you went much further than the board or the examiner. The PTO, in its brief, claims that in Brenner, the top and bottom openings of the storage container are closed with a rigid material. There are no top and bottom openings in Brenner, are there? Well, Your Honor, I believe... Suggesting that it's closed with a rigid material suggests that it's an opening that has been covered by something as opposed to a unitary structure. I don't understand why you made the argument because you didn't have to, but you did, and I feel like it's a misrepresentation of what Brenner not only teaches, but maybe floppiness. I don't know what it was, but I'd like an explanation. Well, Your Honor, I think it's a fair argument. You don't, clearly, but there was so little in the board opinion directly on this issue because it wasn't brief, but it does say both the examiner and the board did say that Brenner disclosed all the limitations except for the top and bottom surfaces being filmed openings and the container being attached to the side of the wall. Since they did say that Brenner discloses all the limitations and since it wasn't in a state it was not disputed before the board, looking at Brenner, to me, it's a fair construction of openings to say that openings exist when there is something that can be pierced. I'm reading from the board's decision. As to Appellant's argument that Brenner fails to disclose either a mixed container mounted to the inner side wall or a mixed storage container having predefined top and bottom openings, both of which are sealed by a thin rupturable membrane, the examiner never alleges that Brenner discloses those elements. I don't understand how you could stand here and represent to me that there's any confusion in the board opinion that would have justified the approach you took in the brief. Well, I apologize, Your Honor. I focused on page A4 and that the first line of A4, that the examiner found in Appellant does not dispute that Brenner discloses the plain container except for the top and bottom surfaces of the cartridge being filled membranes and the mixed storage container being fixedly secured to the inner side wall. And I did very much see that portion that you cited, but there's a lot of things going on in that sentence because what was argued before in the brief and what this paragraph responds to is, look, here's what the claim says, and then the prior art doesn't disclose this combination of references. So this paragraph in the board's opinion says, look, Appellant said that there was a combination and that the prior art doesn't disclose the combination, and to me it was dealing with the argument that there was no combination there and the focus here, as I think the focus was before the board, which is why the board didn't deal with this top and bottom opening issue expressly as well as it maybe could have, is that there's no fixing to the inner side wall and there's no membrane. But I understand, Your Honor, I apologize if you feel that that reading is improper. Well, where is Brenner's bottom opening? Or is it, I don't know, what is it you think in Brenner is the bottom surface that could be replaced by a rupturable membrane? Your Honor, looking at Brenner, is it number 18 or 48 on Figure 2? That's the surface that's meant to be punctured in Brenner quite clearly. So is that the surface where the portion of the unitary structure that could be replaced by a rupturable material? The bottom surface would be 50 and 48. Those are both the lower ends that are the... No, 50 actually is active. Sorry, Your Honor. Nobody ever referred to that as the structure. Yes, Your Honor, 48, and I'm just looking at my... Where's the other... I'm looking at Figure 2, so Figure 2 is 48. I'm just looking for the figure that has the bottom, that describes the bottom. Oh, 54. The bottom surface is the 48 right there, and then the bottom that's next to it. Thank you. The bottom is next to it. It isn't part of the bottom, right? What 50, which we both agree is not labeling of actually the bottom, really is where the bottom is in Brenner. Your Honor, I understand this argument, but it's not one that Appellant ever made, that that's not the bottom. He's making the argument there's no opening. He's not making the argument there's no bottom. That might have been a good argument to have made. Well, actually, he made the argument there is no bottom opening or top opening, right? And so you're now saying that Brenner could have an opening and acknowledging that if you were to put one on there, it wouldn't be on the bottom. Your Honor, they're both the bottom in my view. And if you look at the specification that talks about it. It doesn't make any sense. If you look at the specification, there's the lower portion of, there's the lower portion of, well, of wall 46. I understand Your Honor's point, but he didn't make that argument again that there's no bottom. And the whole analysis, just pulling back a minute, the whole analysis that the Board went through, this is a very, very simple device. And it would be obvious for one of Ordner's skill in the arts to use instead of a rupturable rigid material to substitute the foil membranes of Lisebrand. And whether or not they used the exact words of bottom opening, it was covered in many different ways in their analysis. And if the Brenner argument is not satisfying, it was certainly covered in the analysis of why one would combine both Brenner and Lisebrand. It's a very simple substitution to change the rigid material for the flat membranes that are attached to a different component on the sides of Lisebrand. Okay, thank you, Ms. Ong. I think we're out of time. Mr. Berkman. Your Honor, just a few responsive comments. Your Honor, the government began, I think, their discussion by suggesting that we had abandoned the focus on the claim opening in the bottom at the outset. And Judge Moore, I believe you see this on the issue correctly, that we never did that. Now, we don't agree with the way the board characterized what we were disputing, but that was their conclusion. And I just don't agree with the characterization. We know what we were disputing. And one of the things that we were disputing was, of course, is there a bottom opening? And the issue that I think that I heard represented today is that Brenner may not have shown where that bottom opening is. And, in fact, that's what the board found at A5. It said, having predefined top and bottom openings, both of which are sealed by thin, rupturable membrane, the examiner never alleges that Brenner does disclose those elements. So, first, I think it puts away the idea that we didn't argue this to the board. We did. But the interesting thing, and the reason why I circle back to that, is they say, fine, they agree, Brenner does not disclose that element, and the examiner didn't rely on it. But the problem is they never come back and say where it is in the prior art. They simply say, well, we don't say that it's in Brenner, and it's not shown in Brenner, but they never come in the rest of their opinion and say where that bottom opening is. It's true. Suppose that I agree with you, and you're completely right, they never come in and show where there's a bottom and a top opening which is replaced. It's nonetheless explicitly and unequivocally present in Liz or Brom. I don't know how to present that either. So I guess I don't know what good it would serve you for me to reverse on a technicality when the other reference they expressly cite, though they don't cite it for that element, nonetheless actually completely and utterly discloses that element. So I don't know that that gives your client anything to walk away with, even if we allowed him to win on a technicality because the board didn't cite the element disclosed in the right reference. What the board relied on Liz or Brom for was only the use of foil membrane, and that was how it was used by the examiner, and that's how it was applied by the board. In fact, my arguments about Liz or Brom were, again, just sort of cast aside saying, well, you're making arguments about Liz or Brom doesn't teach putting that internal storage container in the cap and outside the bottle, but that's not important. Your Honor, I think it is important, if I may just have a few seconds to conclude this point. Okay, why just a concluding thought because we're out of time. The board originally did, excuse me, the examiner originally did apply Liz or Brom in, if you look at page 826 of the appendix, that reference was applied by the board originally, or by the examiner originally, but was withdrawn because the examiner couldn't come up with the motivation on why that component, that storage container, would move from the bottle cap into the internal sidewall, and that was an argument I made during the prosecution, and the examiner withdrew that and didn't apply Liz or Brom in that fashion. Okay, thank you, Mr. Berkowitz. Thank both counsel. The case is submitted, and that concludes our session for this morning. All rise. The hour was adjourned until tomorrow morning at 2 a.m. Thank you.